# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE GORDON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:07CV1237RWS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Antoine Gordon moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Gordon claims he received ineffective assistance of counsel when his counsel misinformed him about the statutory penalties for the charged crimes and by advising him that he should go to trial because he "could not possibly" be connected to the charged heroin conspiracy. Gordon claims that, but for his counsel's substandard performance, he would have accepted the government's offered plea deal and received a sentence of probation. For the reasons set forth below, I will deny Gordon's motion.

*Background*

On April 5, 2006, a jury convicted Antoine Gordon of conspiracy to distribute and possess with the intent to distribute in excess of one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Gordon was also convicted

of aiding and abetting that conspiracy. Rodney Holmes represented Gordon at all stages.

Gordon was a police officer with the St. Louis Metropolitan Police Department. Gordon's cousin, Adrian Minnis, was the head of a ring that imported heroin and cocaine from California and distributed the illegal drugs in the St. Louis, Missouri area. Minnis, who had a prior conviction for murder, asked Gordon to run the names of several individuals through police databases to determine if they were "snitching." Gordon lost the names and later sought out Minnis to complete the task. Gordon then used the Regional Justice Information Service (REJIS) system, a law enforcement database that houses criminal records for St. Louis City, St. Louis County, Jefferson County, Franklin County, and St. Charles County to run names for Minnis. REJIS contains information such as criminal charges and pending arrest warrants. Although the database does not identify individuals as informers, it does list criminal cases that are aging but unresolved which might suggest that a person is cooperating with police. Gordon also warned Minnis that law enforcement agencies were investigating Minnis's drug distribution activities.

Before trial, the Government offered two plea deals to Gordon. The first offer was based on three ounces of heroin, which carried a sentencing guidelines

range of 33 to 41 month. The second offer was three years probation in exchange for Gordon's guilty plea to misprision of a felony. Gordon rejected both offers.

Because Gordon was indicted for conspiracy to distribute and possess with the intent to distribute in excess of one kilogram of heroin, the jury was asked to make a special finding as to the amount of heroin involved in Gordon's offense. The jury concluded the quantity was one kilogram or more. The jury's finding on drug quantity subjected Gordon to a statutory sentencing range of not less than ten years to not more than life. Because Gordon was eligible for the "safety valve"[1] provisions of the guidelines and the statute, he was eligible for a sentence below the statutory minimum. Gordon's sentencing guideline range was 97–121 months, and I sentenced him to the bottom of the guideline range, 97 months, on July 21, 2006. Gordon filed, but did not pursue, a direct appeal.

Gordon now moves to have his sentence vacated, set aside or corrected on the basis of ineffective assistance of counsel for two reasons. Gordon claims Holmes was ineffective for failing to inform him that the charges in the indictment had a statutory sentencing range of ten years to life. Gordon claims that the reason

---

[1] To qualify for the "safety valve," (1) the defendant must not have more than one criminal history point, (2) the defendant must not have used violence or credible threats of violence or a firearm or other dangerous weapon, (3) the offense must not have resulted in death or serious bodily injury to anyone, (4) the defendant was not an organizer, leader, manager or supervisor of others, and (5) the defendant must truthfully provide all information and evidence the defendant has concerning the offense. 18 U.S.C. § 3553(f).

he did not agree to plead to the amended charge of misprision of a felony, which would result in a sentence of probation, was that Holmes told him the maximum charge he could receive was 41 months imprisonment. Gordon also states that he did not accept the probation offer because Holmes told him that he "could not possibly" be connected to the heroin conspiracy.

Because Gordon's claims presented factual issues, an evidentiary hearing was held on December 19, 2008. At the evidentiary hearing, Gordon provided contradictory testimony which called into question his credibility. For instance, when questioned whether he knew Adrian Minnis was a drug dealer, Gordon denied that fact.

> Q: You knew that he was a drug dealer?
>
> A: No.
>
> Q: You didn't know he was a drug dealer?
>
> A: No, I didn't know that.

Hr'g Tr. at 33. But just moments later, Gordon acknowledged that he did in fact know Minnis was a drug dealer.

> Q: When you indicated that you were checking to see if somebody was snitching, isn't it a fact that you knew he was a drug dealer?

A. That could be, yes.

Q. Yes or no.

A. Yes.

Id. at 34. Gordon also acknowledged that he had denied knowledge of a plea offer in the past. For example, when Assistant United States Attorney Ken Tihen asked Gordon at the safety valve interview why he did not accept the deal offered, Gordon indicated he was unaware that he had been offered probation. Id. at 26; 83. But, at the evidentiary hearing, Gordon testified that Holmes did present him with the Government's offer of probation. Id. at 16.

*Finding of Facts*

Rodney Holmes was appointed to represent Gordon. Id. at 7, 64–65. They first met at Gordon's arraignment. Id. at 65. At one of their early meetings, Holmes and Gordon discussed the possible sentences Gordon faced. Id. at 67. Holmes discussed the penalty range of ten years to life, but did not discuss guideline calculations. Id. at 67, 84–86. Gordon was visibly shaken and concerned about the sentencing range of ten years to life that he was facing. Id. at 67. Holmes reassured Gordon that, based on his experience as an attorney, there was "no way" Gordon would receive life imprisonment. Id. at 67–68. Despite a statutory minimum sentence of ten years, Holmes boldly suggested that "he

wasn't going to get the – get ten years" because he believed Gordon would receive the safety valve. Id. at 68.

Sometime after Gordon and Holmes went through the discovery provided by the Government, the Government offered Gordon a plea deal based on three ounces of heroin, which carried a guidelines range of 33 to 41 month. Id. at 71–72. Holmes presented the Government's offer to Gordon, but he did not specifically explain that the alternative was ten years to life. Id. at 71, 89. Gordon "flat out" rejected it. Id. at 71–72, 75. Holmes thought Gordon made the right decision when he rejected the Government's offer because he believed Gordon "could get a better deal than that." Id. at 75.

Gordon claimed that Holmes did not tell him the 33 to 41 month sentencing range was part of an offer presented to him. Id. at 53. Instead, Gordon asserted that he understood the 33 to 41 month range to be the sentencing range he was actually facing under the indictment. Id. He claims that, had he known that the 33 to 41 month range was actually an offer in lieu of the sentencing range of ten years to life sentence under the indictment, he would have taken that offer at that time. Id. at 53–54. In light of Gordon's contradictory statements under oath and at the safety valve interview regarding what plea offers he had received, I believe

Holmes informed Gordon that the 33 to 41 month range was an offer and not his maximum possible sentence.

During his representation of Gordon, Holmes discussed the possible witnesses and whether the Government would be able to link Gordon to actual knowledge of the drug conspiracy. Id. at 72–75. Gordon testified that Holmes advised him that the Government did not have "any proof" of drugs and the fact that no one would testify that Gordon had knowledge of drug sales. Id. at 18. Holmes, of course, denied telling Gordon that there was no way he could be found guilty. Id. at 80–81. Based on Gordon's inconsistencies, I do not find Gordon's statement that Holmes told him that the Government did not have "any proof" credible.

Several weeks before the trial, the parties had a pretrial hearing with the Court. Following the hearing, Holmes and Tihen met to discuss the case. Id. at 76–77. Tihen offered a plea deal of three years probation in exchange for Gordon's guilty plea to misprision of a felony. Id. at 77. Holmes conveyed the offer to Gordon. Id. at 16, 77. Gordon recognized that if he accepted the offer, his career as a police officer would end. Id. at 77. He then asked Holmes for advice whether he should accept the plea offer. Id. at 17. Holmes explained to Gordon that he could not tell him what to do. Id. at 17–18. But Holmes advised Gordon

that his odds at trial were 50/50, explained the charges and what the Government needed to prove to obtain a conviction and told him that "this is as good as it gets or doesn't get any better than that." Id. at 77–78, 93–95. Gordon rejected the offer. Id. at 16, 26, 78.[2]

After Gordon was convicted, but prior to sentencing, the parties met for a safety valve interview. At Gordon's safety valve interview, Tihen asked Gordon why he did not accept the probation deal he had been offered. Id. at 83. Gordon indicated he was not aware of the offer. Id. at 82, 83, 108. Gordon asked, "what deal?" Id. at 26. But Gordon admitted at the evidentiary hearing that he was aware of the offer. Id.

At sentencing, Holmes argued that the amount of heroin involved in the conspiracy after the time Gordon became a participant was three ounces and that Gordon should only be held accountable for that amount. Id. at 82. Holmes did so despite the jury's finding that the conspiracy involved more than one kilogram of heroin.[3] Id. Holmes based his arguments on a circuit split, in which the Eighth

---

[2] Holmes testified that he drafted a letter for Gordon to sign that indicated he had been advised of the offer and Gordon rejected it, but Holmes claimed he did not have a copy of the letter because his former firm cannot find the letter. Id. at 78–80. In making this finding of fact, I do not rely on Holmes' testimony regarding the existence of the letter. Gordon acknowledges that he received and rejected the offer. Id. at 16, 26.

[3] The transcript says "cocaine." This, however, was a misstatement on the part of the questioner.

Circuit is in the minority in regarding relevant conduct. Id. at 99. Based on the jury's determination of the quantity involved, I did not accept Holmes' arguments. I did, however, find Gordon eligible for the safety valve and sentenced him to 97 months.

*Legal Standard*

The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims under 28 U.S.C. § 2255. See Caban v. United States, 281 F.3d 778, 781 (8th Cir. 2002). In order for a convicted defendant to prove that his counsel was ineffective, the defendant must first show that counsel's performance was deficient. Strickland, 466 U.S. at 687. To do so, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id. at 687–88. Judicial scrutiny of an attorney's performance must be highly deferential, and thus, the courts should employ a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689.

The defendant must also "show that the deficient performance prejudiced the defense." Id. at 687. He or she must show that there is a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When the petitioner claims that counsel misadvised him of the relative advantages and disadvantages of proceeding to trial rather than pleading guilty, to establish prejudice, the petitioner "must show that, but for counsel's advice, he would have accepted the plea." Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995)

*Discussion*

As Gordon notes, the real issue before me is factual. If Holmes failed to advise Gordon about the statutory range of punishment and/or misadvised Gordon regarding the likelihood of conviction, I must determine whether those failures were unreasonable and whether Gordon was prejudiced by them. But if Holmes advised Gordon of the statutory range of punishment and advised him about the likelihood of conviction and Gordon nonetheless rejected the offer of three years of probation, Holmes did not provide deficient performance and Gordon's claims of ineffective assistance of counsel would necessarily fail. Because Holmes did inform Gordon of the statutory range of punishment and did advise him of the likelihood of conviction, I conclude that Holmes did not provide ineffective assistance of counsel to Gordon.

*A.     Holmes did not fail to disclose the statutory range of punishment*

Gordon's first basis for his ineffective assistance of counsel claim was that Holmes failed to inform him that the charges in the indictment carried a statutory sentencing range of ten years to life. Gordon claims that the reason he did not agree to plead to the amended charge of misprision of a felony (which would result in a sentence of probation) was that Holmes told him the maximum sentence he could receive was 41 months imprisonment.

As noted above, Holmes informed Gordon that the 33 to 41 month range was an offer and not his maximum possible sentence. Although Holmes did not discuss the sentencing guidelines calculations with Gordon, he did discuss the statutory range of ten years to life. Gordon was aware of and concerned about the sentencing range of ten years to life that he was facing, as evidenced by the fact that he was visibly shaken. Because Holmes did in fact inform Gordon about the statutory range of punishment of ten years to life, he could not be ineffective on this basis.

B.  *Holmes did not tell Gordon that he "could not possibly" be connected to the conspiracy*

Gordon's second basis for his ineffective assistance of counsel claim is that Holmes misadvised Gordon when Holmes told him that he "could not possibly" be connected to the heroin conspiracy, which caused Gordon to reject the Government's plea offer of three years probation for misprision of a felony.

As noted above, Holmes did not advise Gordon that the Government could not tie him to the conspiracy. When Gordon asked Holmes for advice whether he should accept the plea offer, Holmes advised Gordon that his odds at trial were 50/50. Because Holmes did not advise Gordon he "could not possibly" be convicted, Gordon's claim of ineffective assistance of counsel fails on this basis.

I have also considered whether to issue a certificate of appealability. To grant a certificate of appealability, a court must find a substantial showing of the denial of a federal constitutional right. *See* Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994).

I believe that Gordon has not made such a showing on the grounds raised in his motion. Therefore, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Antoine Gordon's Motion to Vacate, Set Aside, or Correct his Sentence [#1] is **DENIED**.

Dated this 24th Day of August, 2009.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE